**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JESSE ARON ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:13-cv-00355-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| AMY KRUEGER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment (ECF No. 82) filed by Defendants Greg Arms, Butch Brasky, Anthony Demeo, Danny Ellis, Scott Gutheridge, Gary Hollis, Amy Krueger, Richard Marshall, Nye County, Ricardo Ramerez, Terry Rising, Carina Skyles, Karyn Smith, Melissa Taylor, Shirley Trummell, Lorinda Wichman, Brian Young, and Jadey Zaragoza (collectively "Defendants") on June 20, 2014.  Despite being granted two extensions of time pursuant to untimely requests, (Extension Orders, ECF Nos. 88 & 96), *pro se* Plaintiff Jesse Aron Ross ("Plaintiff") filed his untimely Response (ECF No. 97) on September 21, 2014.  The next day, on September 22, 2014, Plaintiff refiled a copy of his Response as a Cross-Motion for Summary Judgment (ECF No. 98).[1]  Defendants subsequently filed their Reply (ECF No. 100) on October 8, 2014.

## I.   BACKGROUND

According to the operable Second Amended Complaint ("SAC"), Plaintiff is an inmate at High Desert State Prison ("HDSP") after having been sentenced in state court on December

---

[1] Because the cross-motion was filed three months after the June 24, 2014 dispositive motions deadline without seeking leave from the Court or making a showing of good cause, Plaintiff's Cross-Motion for Summary Judgment is **DENIED**. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–10 (9th Cir. 1992) (finding that motions filed after the deadline in the scheduling order can be denied for being untimely unless good cause for the delay is shown).

10, 2012. (SAC at 1, 8, ECF No. 72).  From October 6, 2010 until the date of his sentencing, however, Plaintiff was a pre-trial detainee at Nye County Detention Center ("NCDC") and was housed at both NCDC's Pahrump facility ("NCDC Pahrump") and its Tonopah facility ("NCDC Tonopah"). (*Id.* at 1–8).  Plaintiff alleges that during his time at NCDC Defendants violated his civil rights by denying him medical, dental, and mental health treatment and by denying him access to the exercise yard. (*Id.* at 8–9).

Specifically, Plaintiff alleges nine separate counts of violations to his civil rights. (*Id.* at 10–26).  In Counts I–VI, Plaintiff alleges deliberate indifference to his medical needs in violation of the Fourteenth Amendment. (*Id.* at 10–23).  In Count VII, Plaintiff alleges an equal protection violation based on the same conduct alleged in Counts I-VI. (*Id.* at 24).  In Count VIII, Plaintiff alleges a due process violation based on denied access to the exercise yard. (*Id.* at 25).  Finally, in Count IX, Plaintiff alleges that by failing to implement policies, customs, and practices that ensured detainees received timely medical treatment, Defendants violated the Fourteenth Amendment and the Due Process Clause. (*Id.* at 26).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   <u>DISCUSSION</u>

### A.   **Counts I–VI; Deliberate Indifference**

Plaintiff's first six counts allege deliberate indifference on the part of Defendants for failing to provide necessary medical care. (SAC at 10–23, ECF No. 72).

Generally, a prisoner's deliberate indifference claims arise from the Eighth Amendment's safeguard against cruel and unusual punishment. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187–88 (9th Cir. 2002).  However, when an individual has not been convicted of a crime, but is instead a pre-trial detainee, his rights derive from the due process clause of the Fourteen Amendment rather than the Eighth Amendment. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)).  The due process clause of the Fourteenth Amendment imposes, at a minimum, the same duty as the Eighth Amendment that "persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Id.* (citing *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provided medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).  However, the deliberate indifference test is

not an easy test for a plaintiff to satisfy. *Hallett v. Morgan*, 296 F.3d 732, 745 (9th Cir. 2002); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) ("The Eighth Amendment is not a basis for broad prison reform.  It requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable.  Rather, the Eighth Amendment proscribes the unnecessary and wanton infliction of pain. . . .") (quotations omitted).  The test for deliberate indifference contains two parts.  "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (quotations omitted).  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.*  Such deliberate indifference is shown by proving (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Id.*  However, "an 'inadvertent or negligent failure to provide adequate medical care' alone does not state a claim under § 1983." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

### 1.   Count I – Dental Care for Abscessed Tooth

In support of his claim in Count I, Plaintiff alleges that on October 13, 2010, while being housed at NCDC Pahrump, he submitted a medical request based upon a severe toothache. (SAC at 10, ECF No. 72).  Two weeks later on October 28, 2010, he was interviewed by a Nye County Health and Human Services employee about his dental complaint, but nothing came of this interview. (*Id.*).  However, four months later on February 24, 2011, Plaintiff was receiving medical treatment for pneumonia when the doctor examining him diagnosed that his tooth had an abscessed root and prescribed him antibiotics. (*Id.* at 10–11).  Subsequently, Plaintiff received a full oral exam on March 15, 2011, after which his abscessed tooth was removed. (*Id.*

at 11).

Plaintiff contends that the five-month delay between the filing of his medical request and his receiving dental care constitutes deliberate indifference on the part of Defendants. (*Id.* at 10–11). In their motion, Defendants point out that Plaintiff was interviewed by a healthcare employee in response to his request only two weeks after the request was filed. (MSJ 18:18-22, ECF No. 19; Oct. 13, 2010 Request Form, ECF No. 84-1). Defendants also assert—and Plaintiff does not dispute—that between his interview on October 28, 2010 and his examination on February 24, 2011, Plaintiff had several other medical appointments at which he failed to mention his dental issues. (*Id.* 19:2-4). However, less than three weeks after the February 24, 2011 exam discovering the abscessed tooth, Plaintiff was provided a full oral exam at which his tooth was removed. (*Id.* 18:22-25; Feb. 24, 2011 Doctor's Notes, ECF No. 84-3; Dental Claim Form, ECF No. 84-5).

Though the record does not show that Defendants acted with diligence in providing Plaintiff with medical care for his tooth, the Court finds that Plaintiff has failed to show sufficient evidence that Defendants acted with deliberate indifference. Defendants responded to Plaintiff's complaint by having his tooth examined two weeks after being notified of the complaint, and provided a full oral exam and removal of the tooth less than three weeks after the abscessed tooth was diagnosed. At most, the failure to properly diagnose the tooth abscess during the October 28, 2010 interview or to have a full oral exam conducted sooner than three weeks after the diagnoses amounts to mere negligence, not deliberate indifference. *See Frost*, 152 F.3d at 1130; *see also Lewis v. Naku*, 650 F. Supp. 2d 1090, 1094 (E.D. Cal. 2009) ("The Court finds that the Defendant's failure to initially diagnose Petitioner with degenerative disc dysplasia during this medical visit was not deliberately indifferent and did not violate Plaintiff's constitutional rights."). Accordingly, Defendants are granted summary judgment on Count I.

/ / /

### 2. Count II – Requests to See an Optometrist

In support of his claim in Count II, Plaintiff alleges that on March 12, 2011 he submitted a medical request to see an optometrist because he believed he needed glasses, but his request was denied on the grounds that he did not qualify for the service. (SAC at 12, ECF No. 72). He filed a grievance based on this denial on May 29, 2011, which was denied, and he resubmitted his request on June 12, 2011. (*Id.*). On June 30, 2011, his second request was also denied and Plaintiff was never examined by an eye doctor at NCDC. (*Id.* at 13). However, only eleven days after being transferred to HDSP, Plaintiff was diagnosed with poor vision and subsequently received glasses. (*Id.*).

The Ninth Circuit has recently held that loss of vision, though not life threatening, can be a serious medical need. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (finding a cataract in one eye was a serious medical condition); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (finding that an inmate who needed eyeglasses for double vision and loss of depth perception had a serious medical need). Moreover, Defendants do not assert in their motion that Plaintiff's eye troubles were not severe enough to qualify as a serious medical need. Therefore, there is at least a genuine issue of material fact concerning whether Plaintiff's poor vision constituted a serious medical need that satisfies the first element of his deliberate indifference claim.

Regarding the second element, Plaintiff contends that Defendants were deliberately indifferent in their response to his complaints when they failed to provide him necessary eye care, particularly in light of the fact that he was prescribed glasses shortly after being transferred to the custody of HDSP. (Resp. at 25, ECF No. 97). Defendants counter that they were not deliberately indifferent because pursuant to Nye County's Inmate Medical Indigent Program, they could not provide Plaintiff with non-emergency eye care unless a doctor determined such care was necessary. (MSJ 17:25-18:11, ECF No. 82). This same policy was

the reason provided to Plaintiff for all of his optometry request denials, which state that Plaintiff did not qualify for care because he "ha[d] not received written verification from either a doctor or the NCSO [Nye County Sheriff's Office] stating that his request was an emergency." (March 15, 2011 Denial Letter, ECF No. 84-21; May 29, 2011 Grievance Denial, ECF No. 84-22; June 14, 2011 Denial Letter, ECF No. 84-24).  Although the precise details of this policy remain unclear,[2] it appears that the policy does not allow an indigent inmate without insurance to see a medical professional for a medical complaint unless a medical professional or the NCSO verifies that the complaint is a medical emergency.  In other words, unless an indigent inmate happens to have a separate medical emergency that allows him to see a doctor who could then diagnose him or his medical condition is so obviously an emergency that someone without medical training from the NCSO could identify it as such, he is automatically precluded from receiving healthcare.

A reasonable jury could find that such a policy, which mandates deliberate indifference on the part of prison officials unless a doctor tells them they can act, constitutes deliberate indifference in its own right. *See Colwell*, 763 F.3d at 1068 ("A reasonable jury could find that Colwell was denied surgery, not because it wasn't medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn't have helped him, but because the *policy* of the NDOC is to require an inmate to endure reversible blindness in one eye if he can still see out of the other.  This is the very definition of deliberate indifference."); *see also Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) ("Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury.").  Indeed, Defendants argument against Plaintiff's claim appears to be that they

---

[2] In his Response to the Summary Judgment Motion, Plaintiff attached a copy of the Nye County Procedures for Health and Human Services. (Nye County Procedures, Ex. U to Response 52–85, ECF No. 97-6).  Section 4 of this document is entitled "Medical Indigent Programs (MIP)"  and section 6.3 is entitled "Indigent Inmate Policy," however, neither section contains the requirement that indigent inmates may only receive care after obtaining written verification that they have a medical emergency. (*Id.*).

could not have been deliberately indifferent because the policy required them to be indifferent. *See* (MSJ 18:8–11, ECF No. 82) ("[S]ince there was no documentation stating th[at] Ross' optometry requests were medical necessities, NCHHS had no choice but to deny Ross' requests.  Accordingly, Defendant were not deliberately indifferent to Ross' optometry needs.").  Defendants, however, cannot as a group claim a lack of deliberate indifference based on adherence to a policy over which some of the Defendants had direct control.  While it is possible that some of the Defendants may be entitled to summary judgment on this claim due to their lack of personal involvement, Defendants have failed to identify which Defendants may be so entitled.  Accordingly, summary judgment on Count II is denied.

### 3.    Count III – Dental Care for Rotting Teeth

In support of his claim in Count III, Plaintiff alleges that on September 16, 2011 he submitted a medical request to be seen by a dentist for an impacted wisdom tooth. (SAC at 14, ECF No. 72).  On September 25, 2011, he submitted a second request asking that his first request be expedited because of his "severely worsen[ing]" condition. (*Id.*).  On September 26, 2011, however, his requests were denied. (*Id.*).  On May 6, 2012, Plaintiff submitted a third medical request to be seen by a dentist, this time claiming that he had two decaying teeth. (*Id.* at 15).  This request was also denied. (*Id.*).  On March 7, 2013, less than three months into his incarcerated at HDSP, Plaintiff submitted another request to see a dentist which resulted in having two of his teeth removed due to decay. (*Id.* at 16).

Defendants do not dispute that "[d]ental care is an important medical need, the denial of which may constitute an Eighth Amendment violation." *Dixon v. Bannister*, 845 F. Supp. 2d 1136, 1143 (D. Nev. 2012) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).  Furthermore, Defendants do not assert that Plaintiff's two rotten teeth were not severe enough to qualify as a serious medical need.  Therefore, there is at least a genuine issue of material fact concerning whether Plaintiff's rotten teeth constituted a serious medical need that satisfies the

first element of this deliberate indifference claim.

Defendants, however, again argue that they were not deliberately indifferent because Plaintiff had failed to obtain written verification of his medical emergency from either a doctor or the NCSO as required under the Nye County's Inmate Medical Indigent Program. (MSJ 18:26–19:9 ECF No. 82); *see also* (Sept. 26, 2011 Denial Letter, ECF No. 84-7; May 8, 2012 Denial Letter, ECF No. 84-9). As the Court already held in relation to Count II, there is at least a genuine issue of material fact concerning whether the policy under the Nye County's Inmate Medical Indigent Program is itself a violation of Plaintiff's constitutional rights. *See supra* 7:1– 9:6. Therefore adherence to the policy does not show that Plaintiff's deliberate indifference claim fails.

Defendants also argue in their Reply that they could not have been deliberately indifferent to Plaintiff's dental requests because Plaintiff had two other medical appointments during the summer of 2012 to refill his prescriptions and examine his ankle and the physician's notes from these appointments do not show that Plaintiff complained about his teeth. (Reply 5:1–11, ECF No. 100; Summer 2012 Exam Notes, ECF No. 84-10). Defendants also point out that, on December 8, 2012—just before his transfer to HDSP—Plaintiff requested a tooth examination during a doctor's visit, and the physician who examined Plaintiff's tooth found no infection. (Reply 5:1–11, ECF No. 100; Dec. 8, 2012 Exam Notes, ECF No. 84-11).

However, the December 8, 2012 Exam Notes simply states: "Ears, Nose, Mouth, and Throat Scattered caries and chipped teeth, no infection," and the early exam notes contain no indication one way or another concerning whether Plaintiff mentioned his teeth. (Summer 2012 Exam Notes, ECF No. 84-10; Dec. 8, 2012 Exam Notes, ECF No. 84-11). Therefore, these notes merely create factual questions concerning what, if anything, Plaintiff said to various doctors during this time about his teeth. Moreover, Defendants are not entitled to summary judgment on this claim regardless of what Plaintiff may or may not have told physicians during

his visits.  Defendants denied Plaintiff's request for dental care based exclusively upon the policy of the Nye County's Inmate Medical Indigent Program, not based upon any finding by a doctor that Plaintiff's teeth were fine or Plaintiff's failure to report his condition to doctors during other visits. *See* (Sept. 26, 2011 Denial Letter, ECF No. 84-7; May 8, 2012 Denial Letter, ECF No. 84-9).  Therefore, because the policy was the exclusive reason for the denial of dental care, there is at least a genuine issue of material fact concerning whether Defendants' automatic denial of Plaintiff's requests pursuant to the policy constituted deliberate indifference.  Accordingly, summary judgment on Count III is denied.[3]

### 4.    Count IV – Passing Blood

In support of his claim in Count IV, Plaintiff alleges that in early January of 2012, while incarcerated at NCDC Tonopah, he submitted a medical request because he was passing blood in his stool and was having chest pains. (SAC at 17, ECF No. 72).  About two months later he was examined by a doctor who ordered an x-ray, but no x-ray was performed. (*Id.*).  Then on March 12, 2012, he was seen by another doctor who ordered a colonoscopy.  However, despite these orders and Plaintiff's continuing symptoms, not tests were done while Plaintiff was at NCDC. (*Id.*).

Defendants argue that they cannot be deliberately indifferent to Plaintiff's medical condition in Count IV because Plaintiff was examined by a doctor on March 19, 2012 after his first complaint and Defendants had consistently approved Plaintiff to receive treatment for his condition between January 12, 2012 and November 28, 2012. (MSJ 16:11–17:22 ECF No. 82).  Defendants also assert that from May to November of 2012, Plaintiff did not file any grievances related to this medical issue. (*Id.*).  In support of these arguments, Defendants provide documents showing that Plaintiff was seen by a doctor for this condition on March 19,

---

[3] Again, it is possible that some of the Defendants may be entitled to summary judgment on this claim due to their lack of personal involvement, but Defendants have failed to identify which Defendants may be so entitled.

2012; that Plaintiff was pre-authorized to receive treatment on January 12, March 14, April 17, August 24, September 11, and November 19, 2012; and that Plaintiff requested medical care on January 8, March 12, March 20, and November 11, 2012. (Medical Forms, ECF Nos. 84-12– 84-17).

None of Defendants' arguments or documents, however, refute Plaintiff's assertions or show that Defendants were not deliberately indifferent.  All Defendants have shown is that (1) Plaintiff complained of his medical condition, (2) Defendants recognized the condition was a medical emergency and approved treatment, (3) Defendants took Plaintiff to one doctor who recommended an x-ray and a colonoscopy, and (4) Defendants continued to preapprove Plaintiff to receive treatment for his condition. (*Id.*).  However, Defendants never argue or show that Plaintiff ever actually received any treatment other than the one visit where the doctor recommended that Plaintiff needed to see a GI specialist for a colonoscopy. (March 19, 2012 Exam Notes, ECF No. 84-16).  All Defendants' evidence shows is that Plaintiff had a sufficiently severe medical need to satisfy the first element of deliberate indifference, and that a genuine issue of material fact exists concerning whether Defendants ever actually provided Plaintiff with the treatment recommended by a doctor nine months before Plaintiff was transferred to HDSP.  If Plaintiff never received the care recommended by a physician for a severe medical condition, Defendants' failure to provide that care could satisfy the second element of Plaintiff's claim. *See Caplinger v. CCA*, 999 F. Supp. 2d 1203, 1214 (D. Idaho 2014) ("Deliberate indifference can be 'manifested by . . . prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).  Accordingly, summary judgment.

### 5.   Count V – Requests to See Mental Health Professional

In support of his claim in Count V, Plaintiff alleges that between January 1, 2012 and

June 1, 2012 he submitted several requests to see a psychiatrist or other mental health professional, but all his requests were denied because he could not pay for the treatment. (SAC at 18, ECF No. 72).  On June 11, 2012, Plaintiff submitted a formal grievance based on his denials.  Plaintiff received a response saying that he was not being denied mental health treatment because he had seen a counselor and because NCDC's mental health professionals were no longer under contract and the local private facility was refusing to see inmates. (*Id.* at 18–19); *see also* (Decl. of Defendant Marshall ¶¶ 25–28, ECF No. 84).

Defendants assert that they were not deliberately indifferent to Plaintiff's requests to see a mental health professional because he was authorized for and received treatment from a mental health professional on a nearly monthly basis from November 2010 until June of 2012. (MSJ 19:10–20:13, ECF No. 82; Psych Authorization Letters, ECF No. 84-18).  However, as Defendants explained to Plaintiff in the responses to his grievance, the contract for the mental health professionals employed by NCDC expired in June 2012 and the doctors declined to renew the contract. (Grievance Responses, ECF No 84-19).  Defendants then began transporting Plaintiff and other inmates to Nye Regional Medical Center ("NRMC"), but shortly thereafter, NRMC began refusing to see NCDC inmates. (Decl. of Defendant Marshall ¶ 27, ECF No. 84).  Plaintiff then had at least one visit with a counselor at Pahrump Valley Counseling in September of 2012. (Psych Authorization Letters, ECF No. 84-18).

"It is firmly established that medical needs [protected by the Eighth Amendment] include not only physical health needs, but mental health needs as well." *Madrid v. Gomez*, 889 F. Supp. 1146, 1255 (N.D. Cal. 1995); *see Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("[R]equirements for mental health care are the same as those for physical health care needs.").  However, Defendants' unrefuted evidence showed that they routinely provided Plaintiff with mental health counseling for over a year and a half, and when their contracted health care professionals became unavailable, they took several steps and partially succeeded in

providing Plaintiff with his requested care.  Therefore, Defendants were not deliberately indifferent to Plaintiff's requests for mental health treatment.  *See Bowen v. Treiber*, 492 F. Supp. 2d 1206, 1213–14 (E.D. Cal. 2006) (finding that prisoner officials were not deliberately indifferent to inmates hernia when they attempted to treat his symptoms and the fifteen month delay in receiving surgery was caused by waiting for administrative approval); *see also Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment.").  Moreover, Plaintiff claim must fail because he does not allege any harm that resulted from the disruption to his routine mental health visits. *See Jett*, 439 F.3d at 1096 (Deliberately indifference "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need *and (b) harm caused by the indifference*.") (emphasis added); *Wood*, 900 F.2d at 1335 ("Nor does the delay in treatment that Wood suffered constitute an eighth amendment violation; the delay must have caused substantial harm.").  Accordingly, Defendants are granted summary judgment on Count V.

### 6. Count VI – Requests to have Psychological Medications Refilled

In support of his claim in Count VI, Plaintiff alleges that on July 10, 2012 he submitted a medical request to have his psychological medications refilled. (SAC at 20, ECF No. 72).  He further alleges that he submitted additional requests to have his medications refilled on August 1, August 18, and September 11, 2012, but these requests were ignored. (*Id.* at 20–21).  On September 15, 2012, Plaintiff ran out of his psychological medications and began to experience symptoms of withdrawal, including chest pains, hot and cold flashes, headaches, and hallucinations. (*Id.* at 21–22).  Plaintiff then admits that his medications were refilled on September 18, 2012, but that he ran out again on October 5, 2012. (*Id.* at 22).  On October 5, 2012, Plaintiff submitted a grievance asking for his medication to be refilled and to see a psychiatrist, and it is unclear from the SAC whether Plaintiff's prescriptions were refilled over

the remaining two months he was housed by NCDC. (*Id.* at 22–23).

Defendants assert that they were not deliberately indifferent to Plaintiff's requests for his medications to be refilled because his prescriptions were refilled with only some short interruptions caused by the loss of their contracted mental health professionals and short staffing. (MSJ 19:10–20:13, ECF No. 82; Reply 13:4–14:9, ECF No. 100): *see also* (Oct. 5, 2012 Grievance Response, ECF No. 84-19) (stating "medications are at CVS [and] are being picked up and ship[ped] to [NCDC] on next transport"). While Defendants may have been negligent in allowing Plaintiff's medications to run out on at least two occasions, Plaintiff admits that his prescriptions were refilled the first time after only three days, and the undisputed evidence shows that Defendants took immediate action to refill Plaintiff's prescription on the day they ran out the second time. Therefore, Defendants were not deliberately indifferent to Plaintiff's need to have his prescriptions refilled. *See Pickard v. Holton*, No. 12-CV-01489-JST, 2013 WL 5195616, at *5–6 (N.D. Cal. Sept. 16, 2013) ("Finally, although Defendants admit occasional isolated delays in providing Pickard's pain medication may have occurred due to emergencies and safety considerations that are involved in any jail setting, there is no evidence showing anyone ever intentionally withheld pain medication from Pickard. On these facts, the Court concludes that Defendants were not deliberately indifferent to Plaintiff's medical needs.") (citations omitted). Accordingly, Defendants are granted summary judgment on Count VI.

### B.   Count VII; Equal Protection

Count VII of Plaintiff's SAC merely states the general allegation that while he was incarcerated by NCDC between October 6, 2012 and December 10, 2012, Plaintiff was denied medical care in violation of the Equal Protection Clause because detainees who had money and insurance were not denied this care. (SAC at 24, ECF No. 72).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotations omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

Plaintiff's claim here is that indigent prisoners were not treated the same as prisoners who could pay for their own medical treatment because indigent prisoner were not able to obtain the same level medical care, including care such as "elective/cosmetic procedures." (SAC at 24, ECF No. 72). However, "indigent prisoners are not a suspect class." *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999). Furthermore, "there is no 'fundamental interest' in inmate-initiated non-emergency or non-life-threatening medical visits." *Gardner v. Wilson*, 959 F. Supp. 1224, 1229 (C.D. Cal. 1997). Therefore, because indigent prisoners are not a suspect class and no fundamental interest was burdened, any different treatment passes constitutional scrutiny so long as it is rationally related to a legitimate governmental interest. *See Taylor v. Delatoore*, 281 F.3d 844, 849 (9th Cir. 2002).

Controlling costs by limiting an indigent inmates' ability to abuse scare medical services is a legitimate state purpose. *See Gardner*, 959 F. Supp. at 1229; *see also Johnson v. Dep't of Pub. Safety & Corr. Servs.*, 885 F. Supp. 817, 820 (D. Md. 1995) (A co-pay "policy represents a commendable effort to promote inmate responsibility and the efficient use of scarce medical resources."). Therefore, Defendants' policy of allowing prisoners who can afford non-essential medical care to obtain it while denying indigent prisoners from receiving that care at the expense of the state passes equal protection scrutiny. Moreover, looking at the issue another way, Defendants were not treating similarly situated individuals differently because all inmates

are required to pay for their own non-emergency medical care. *See Rogers v. Ponce*, No. 1:09-CV-01027, 2011 WL 798818, at *2 (E.D. Cal. Feb. 22, 2011) ("Plaintiff is not being treated differently than similarly situated inmates, as all inmates are required to pay for their photocopies."); *cf. Pleasant v. Cnty. of Merced*, No. 1:13-CV-00805-AWI, 2014 WL 5781235, at *5 (E.D. Cal. Nov. 5, 2014) ("Here, however, jail officials did not treat similarly situated individuals differently, as indigent inmates seeking welfare kits were not similarly situated to non-indigent inmates ordering other items from the commissary during the 6 1/2 week transition to the new vendors."). Accordingly, Defendants are granted summary judgment on Count VII.

### C.   Count VIII;  Exercise Yard

In Count VIII, Plaintiff alleges that while he was housed at NCDC Pahrump he was denied access to the exercise yard and kept confined in a small cell in violation of the Due Process Clause. (SAC at 25, ECF No. 72).

In response to Plaintiff's claim Defendants admit that the outside exercise yard at NCDC Pahrump was closed for seven to nine months because construction of a new jail required removal of the security fence around the yard. (MSJ 20:14–21:8, ECF No. 82; Decl. of Defendant Marshall ¶¶ 34–39, ECF No. 84). Defendants therefore assert that because the closure was not "due to some sort of malicious intent on behalf of the defendants" Plaintiff's claim should fail. (MSJ 20:14–21:8, ECF No. 82).

Like his other deliberate indifference claims, a claim based on a prisoner's lack of access to outside exercise for an extended period of time derives from the due process clause of the Fourteenth Amendment and originates under the Eighth Amendment's prohibition against cruel and unusual punishment. *See Gibson*, 290 F.3d at 1187–88; *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment."). Accordingly, in order to support his claim, Plaintiff

need only "objectively show that he was deprived of something sufficiently serious, and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (internal quotations omitted).

Regarding the first element, the Ninth Circuit has "held consistently that 'ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation for Eighth Amendment purposes." *Thomas*, 611 F.3d at 1151 (internal quotations omitted).  Even taking the low end of Defendants admitted range, the deprivation of all outdoor exercise for a period of seven months is sufficiently serious to meet the first element of the Eighth Amendment analysis. *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); *Keenan v. Hall*, 83 F.3d 1083, 1089–90 (9th Cir. 1996) (defendants were not entitled to summary judgment on claim that inmate was not provided with outdoor exercise for 6 months while in segregation); *Allen v. Sakai*, 48 F.3d 1082, 1087–88 (9th Cir. 1994) (six-week restriction of outdoor exercise to 45 minutes per week for prisoner in indefinite segregation constituted a deprivation sufficient to implicate the Eighth Amendment).

Regarding the second element, "purposeful or knowing conduct is not necessary to satisfy the subjective intent requirement of deliberate indifference for claims challenging conditions of confinement." *Jones v. Garcia*, 430 F. Supp. 2d 1095, 1103 (S.D. Cal. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).  Therefore, Defendants' showing that they were not motivated by a malicious intent to punish Plaintiff in denying him access to an exercise yard does not entitle them to summary judgment on this claim.[4]  Defendants knew

---

[4] To the extent Defendants are also seeking leniency on the grounds that they did not have the resources to provide Plaintiff with outdoor exercise while the normal yard was unsuitable for use, "costs cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards." *Wright v. Rushen*, 642 F.2d 1129, 1134 (9th Cir. 1981).

about the lack of outdoor exercise and failed to find a suitable solution for months.

Accordingly, summary judgment on Count VIII is denied.

**D.    Count IX; Policies and Training**

In Count IX, Plaintiff alleges that Defendant Demeo, as the elected sheriff of Nye Count,

failed to properly formulate policies and train employees to ensure that detainees received

necessary medical care, which resulted in the injuries Plaintiff suffered in the previous counts.

(SAC at 26, ECF No. 72).

In their motion, Defendants merely make the conclusory assertion that Defendant

Demeo is entitled to summary judgment because Plaintiff "puts forth no evidence to support his

claim," and "[a]s part of NCDC employees' official training, each employee must complete

course work to ensure that they are qualified to provide adequate healthcare." (MSJ 22:20–

23:25, ECF No. 82).  However, the Court has already found that there is at least a genuine issue

of material fact concerning whether a policy under the Nye County's Inmate Medical Indigent

Program is unconstitutional. *See infra* 7:1–11:9.  Furthermore, as an official in charge of the

implementation of the policy at issue, Defendant Demeo is the proper defendant for this claim.

*See Colwell*, 763 F.3d at 1071 (9th Cir. 2014) ("We have held that a corrections department

secretary and prison warden were proper defendants in a § 1983 case because 'a plaintiff

seeking injunctive relief against the State is not required to allege a named official's personal

involvement in the acts or omissions constituting the alleged constitutional violation.  Rather, a

plaintiff need only identify the law or policy challenged as a constitutional violation and name

the official within the entity who can appropriately respond to injunctive relief.'") (quoting

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)).  Accordingly,

summary judgment on Count IX is denied.

**E.    Other Matters**

In addition to their substantive arguments for summary judgment, Defendants also raise

several other grounds for summary judgment on some or all of Plaintiff's claims.  Because the Court has determined that some of Plaintiff's claims survive Defendants' substantive arguments, the Court will now address Defendants' other alleged grounds for summary judgment.

### 1.   Commissioner Defendants

Defendants Hollis, Borasky, and Wichman (the "Commissioner Defendants") are county commissioners being sued in both their official and individual capacities. (SAC at 7, ECF No. 72).  Defendants contend that the Commissioner Defendants are entitled to summary judgment in both their official and individual capacities as matter of procedural right. (MSJ 10:5-28, ECF No. 82).

An official-capacity suit "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1984) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).  Accordingly, "a plaintiff seeking to recover in an official capacity suit must look to the government entity itself" and not the actual official when the government entity is a named defendant. *Id.* at 166.  Therefore, because Nye County is a named defendant, it would be redundant to keep the Commissioner Defendants in this suit in their official capacities.

Regarding their individual capacities, the Commissioner Defendants can only be personally liable if Plaintiff pleads and proves that either: (1) the Commissioner Defendants had personal involvement in the constitutional deprivation, or (2) that there was a sufficient causal connection between the Commissioner Defendants' wrongful conduct and the constitutional violation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  As a basis for suing the Commissioner Defendants in their individual capacities, Plaintiff argues that he mailed letters to each of them complaining of his lack of proper medical treatment on two separate occasions, but the Commissioner Defendants failed to take any action to help him

obtain medical treatment.[5] (Resp. 56–58, ECF No. 97).  Defendants do not refute this assertion. (MSJ 10:5-28, ECF No. 82).  Plaintiff also argues that pursuant to state law, the Commissioner Defendants are responsible for insuring the proper treatment of prisoners, which they failed to do by permitting unconstitutional policies. (*Id.* at 58–60) (citing Nev. Rev. Stat. § 211.020). Plaintiff's mailing of letters to the Commissioner Defendants giving them notice of Plaintiff's claims is insufficient to constitute personal involvement in the alleged constitutional deprivations.  Furthermore, the state law cited by Plaintiff only shows that the Commissioner Defendants would be the proper parties to sue in their official capacities if Plaintiff were not also suing Nye County.  Accordingly, summary judgment is granted on all claims in favor of the Commissioner Defendants in their official and individual capacities.

### 2.    Monell Claims against Nye County

Defendants also argue that Plaintiff's claim against Nye County must fail as a matter of law. (MSJ 13:1-14:15, ECF No. 82).  Defendants, however, base their entire argument on the premise that Plaintiff "cannot show that Nye County had a policy or custom in place that resulted in the injuries that [Plaintiff] is alleging." (*Id.*).  Because this Court has already found that that there is at least a genuine issue of material fact concerning whether a policy under the Nye County's Inmate Medical Indigent Program is unconstitutional and the cause of Plaintiff's injuries, Defendants' argument fails. *See infra* 7:1–11:9.

### 3.    Qualified Immunity

Defendants next assert that they are all entitled to qualified immunity when sued in their individual capacities. (MSJ 11:15-12:28, ECF No. 82).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[5] Plaintiff does, however, admit that Defendant Borasky called NCDC on at least one occasion to inquire about Plaintiff's situation. (Resp. 57, ECF No. 97).

have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Id.* at 232.  "First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right." *Id.*  "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*  "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id.* "For a constitutional violation to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Qualified immunity is intended to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

First, the Court has found that Plaintiff has shown sufficient facts to create a genuine issue of material fact concerning whether his constitutional rights were violated. *See infra* 7:1–12:24, 17:11–19:2.  Second, Plaintiff's right to receive necessary medical care and outdoor exercise is clearly established in this circuit. *See, e.g.*, *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) ("A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment.");.*LeMaire*, 12 F.3d at 1457 ("Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment.").  The parameters of these rights were sufficiently clear that all Defendants would understand that denying Plaintiff necessary medical care—including care specifically prescribed by a doctor—or any outdoor exercise for several months would violate these rights, even if the violations resulted from following a policy or from construction at the jail. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("Where a statute

1    authorizes official conduct which is patently violative of fundamental constitutional principles,

2    an officer who enforces that statute is not entitled to qualified immunity.").  Defendants'

3    unsupported contention that "all of their actions were reasonably thought to be consistent with

4    recent case law concerning the medical, dental, and mental health care of [Plaintiff]" does not

5    show that they are entitled to qualified immunity. (MSJ 12:25–27, ECF No 82).

6            **4.   Exhaustion**

7          The Prison Litigation Reform Act (the "PLRA") mandates that inmates exhaust all

8    available administrative remedies before filing "any suit challenging prison conditions,"

9    including, but not limited to, suits under § 1983. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006).

10   Additionally, the issue of exhaustion should be decided, if feasible, before reaching the merits

11   of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  In PLRA cases, it is

12   the defendant's burden to prove that (1) there was an available administrative remedy, and (2)

13   that the prisoner did not exhaust that available remedy. *Id.* at 1172.  "Once the defendant has

14   carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the

15   prisoner to come forward with evidence showing that there is something in his particular case

16   that made the existing and generally available administrative remedies effectively unavailable

17   to him." *Id.*  However, the ultimate burden of proof remains with the defendant. *Id.*

18         Defendants assert that Plaintiff lacks standing to bring any of his claims because he

19   failed to exhaust his administrative remedies by not filing for reviews of his denials. (MSJ

20   14:16-15:7).  However, Defendants fail to provide any evidence of the alleged available

21   administrative remedy beyond one sentence in an affidavit by Defendant Marshall stating that

22   "[p]ursuant to the grievance process at NCDC, Ross can file a review request at each denial up

23   to the Sheriff." (Decl. in Supp. ¶ 41, ECF No. 84).  This self-serving, conclusory sentence alone

24   is insufficient for Defendants to meet their burden of showing an available administrative

25   remedy on summary judgment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 82) is **GRANTED in part and DENIED in part**.  Summary Judgment is granted in favor of all Defendants on Counts I and V–VII of the Second Amended Complaint.  Summary judgment is granted in favor of Defendants Hollis, Borasky, and Wichman on all claims in their official and individual capacities.  Summary Judgment is denied on all other claims.

**IT IS FURTHER ORDERED** that Plaintiff's Cross-Motion for Summary Judgment (ECF No. 98) is **DENIED**.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this 31st day of March, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge